Bryan Blaney
NORRIS MCLAUGHLIN & MARCUS
875 Third Avenue, 18th Floor
New York, New York 10022
Telephone (212) 808-0700
Attorneys for Defendant
Environmental Energy Recycling Corporation, LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
TRI-STATE BIODIESEL, LLC,

               Plaintiff,

            v.

ENVIRONMENTAL ENERGY RECYCLING
CORPORATION, LLC.

               Defendant.
-------------------------------------------------------------------x

Civil Case No.:
08-CIV-2997

**ANSWER WITH SEPARATE AFFIRMATIVE DEFENSES AND COUNTER-CLAIMS**

Defendants, Environmental Energy Recycling Corporation, LLC, by its attorneys, Norris, McLaughlin & Marcus, PA, for its Answer to Plaintiff's Complaint, states as follows:

PARTIES

1. Defendant has no knowledge, or factual basis either to admit or deny the allegations contained in Paragraph 1 and, accordingly has no response to them. Moreover, to the extent that they state a legal conclusion, he has no obligation for response.

2. Defendant admits the allegation contained in Paragraph 2.

JURISDICTION

3. Defendant has no response to the allegations in Paragraph 3 to the extent that they state a legal conclusion. Defendant, however, denies the assertion that the amount actually in controversy is over Seventy-Five Thousand dollars.

4. Defendant has no knowledge or factual basis either to admit or deny the allegations contained in Paragraph 4 and, accordingly has no response to them. Moreover, to the extent that they state a legal conclusion, he has no obligation for response.

5. Defendant admits the allegations contained in Paragraph 5.

VENUE

6. Defendant denies the allegations contained in Paragraph 6 of Plaintiff's Complaint.

7. Defendant denies the allegations contained in Paragraph 7 of Plaintiff's Complaint.

8. Defendant denies the allegations contained in Paragraph 8 of Plaintiff's Complaint.

9. Defendant has no knowledge or factual basis either to admit or deny the allegations contained in Paragraph 9 and, accordingly has no response to them. Moreover, and to the extent that the allegations state legal conclusions, he has no obligation to respond.

10. Defendant has no response to the allegation contained in Paragraph 10. Moreover, and to the extent that it states a legal conclusion, he has no obligation to respond.

FACTUAL BACKGROUND

11. Defendant admits the allegations contained in Paragraph 11 of Plaintiff's Complaint.

12. Defendant denies the allegations contained in Paragraph 12 of Plaintiff's Complaint.

13. Defendant denies the allegations contained in Paragraph 13 of Plaintiff's Complaint.

14. Defendant denies the allegations contained in Paragraph 14 of Plaintiff's Complaint.

15. Defendant denies the allegations contained in Paragraph 15 of Plaintiff's Complaint.

16. Defendant denies the allegations contained in Paragraph 16 of Plaintiff's Complaint.

17. Defendant denies the allegations contained in Paragraph 17 of Plaintiff's Complaint.

18. Defendant denies the allegations contained in Paragraph 18 of Plaintiff's Complaint.

19. Defendant denies the allegations contained in Paragraph 19 of Plaintiff's Complaint.

20. Defendant denies the allegations contained in Paragraph 20 of Plaintiff's Complaint.

21. Defendant denies the allegations contained in Paragraph 21 of Plaintiff's Complaint.

22. Defendant denies the allegations contained in Paragraph 22 of Plaintiff's Complaint.

23. Defendant denies the allegations contained in Paragraph 23 of Plaintiff's Complaint.

24. Defendant denies the allegations contained in Paragraph 24 of Plaintiff's Complaint.

25. Defendant denies the allegations contained in Paragraph 25 of Plaintiff's Complaint.

26. Defendant denies the allegations contained in Paragraph 26 of Plaintiff's Complaint.

27. Defendant denies the allegations contained in Paragraph 27 of Plaintiff's Complaint.

28. Defendant denies the allegations contained in Paragraph 28 of Plaintiff's Complaint.

29. Defendant denies the allegations contained in Paragraph 29 of Plaintiff's Complaint.

FIRST CAUSE OF ACTION – BREACH OF CONTRACT

30. Defendant denies the allegations contained in Paragraph 30 of Plaintiff's Complaint.

31. Defendant denies the allegations contained in Paragraph 31 of Plaintiff's Complaint.

32. Defendant denies the allegations contained in Paragraph 32 of Plaintiff's Complaint.

33. Defendant denies the allegations contained in Paragraph 33 of Plaintiff's Complaint.

SECOND CAUSE OF ACTION - UNJUST ENRICHMENT

34. Defendant denies the allegations contained in Paragraph 34 of Plaintiff's Complaint.

35. Defendant denies the allegations contained in Paragraph 35 of Plaintiff's Complaint.

36. Defendant denies the allegations contained in Paragraph 36 of Plaintiff's Complaint.

37. Defendant denies the allegations contained in Paragraph 37 of Plaintiff's Complaint.

## THIRD CAUSE OF ACTION – CONVERSION

38. Defendant denies the allegations contained in Paragraph 38 of Plaintiff's Complaint.

39. Defendant denies the allegations contained in Paragraph 39 of Plaintiff's Complaint.

40. Defendant denies the allegations contained in Paragraph 40 of Plaintiff's Complaint.

41. Defendant denies the allegations contained in Paragraph 41 of Plaintiff's Complaint.

**WHEREFORE,** Defendant demands dismissal of the complaint together with such other and further relief as this Court deems just and proper.

## AFFIRMATIVE DEFENSES

Defendant states the following affirmative defenses in response to Plaintiff's Complaint:

### FIRST AFFIRMATIVE DEFENSE—Statute of Frauds

Plaintiff's claims of breach of contract, unjust enrichment and conversion are predicated on the existence of an agreement between the parties, and for that reason are barred on the grounds of the Statute of Frauds because there is no final agreed upon writing, signed by the defendant, which states each of the essential terms of the alleged agreement.

### SECOND AFFIRMATIVE DEFENSE – Parol Evidence Rule

Plaintiff's claims of breach of contract, unjust enrichment and conversion are barred on the grounds of the Parol Evidence Rule, because the assertion that an oral agreement existed between the parties which "completed" an incomplete and unsigned agreement necessarily fails because such evidence would be inadmissible as precluded by the parole evidence rule.

### THIRD AFFIRMATIVE DEFENSE – Failure To State A Claim

Plaintiff's claim of breach of contract fails to state a claim on which remedy can be conveyed because there was no enforceable contract between the parties for which the defendant breached its obligations

### FOURTH AFFIRMATIVE DEFENSE -- Estoppel

Plaintiff's claims of breach of contract, unjust enrichment and conversion are also barred on the grounds of Estoppel because the plaintiff failed to fulfill its obligations under the proposed agreement – namely to provide 100% of its waste cooking oil supply to the defendant, and each week to provide at least 19.5 gallons to the defendant.

### FIFTH AFFIRMATIVE DEFENSE --- Equitable Estoppel

Plaintiff's claims breach of contract, unjust enrichment and conversion are also barred on the grounds of Equitable Estoppel, because Plaintiff represented that it was able to provide 19.5 gallons of waste cooking oil each week to the Defendant and caused the Defendant to rely to its detriment upon that representation.

### SIXTH AFFIRMATIVE DEFENSE -- Failure to Satisfy a Condition Precedent

Plaintiff's claims breach of contract, unjust enrichment and conversion are also barred because it failed to satisfy a necessary condition precedent, namely it failed to provide 19.5 gallons of waste cooking oil each week, prior to any entitlement to collect $1.00 per gallon from the defendant.

### SEVENTH AFFIRMATIVE DEFENSE -- Failure to Perform A Contractual Obligation

Plaintiff's claims breach of contract, unjust enrichment and conversion are also barred because, to the extent there was a contract between the parties, the Plaintiff failed to perform its obligations, namely the provision of 100% of its collections of waste cooking oil after January 2008

to EERC; the provision of at least 19,500 gallons of waste cooking oil each week, and the delivery of that oil to EERC.

### EIGHTH AFFIRMATIVE DEFENSE – Failure to Mitigate

Plaintiff's claims for remedy for breach of contract, unjust enrichment and conversion also fail because it was well and early advised by the defendant that it had concluded that the Plaintiff was not fulfilling its obligations, and yet the Defendant took not steps to alter its conduct and mitigate its now asserted losses.

### PRAYER FOR RELIEF

**WHEREFORE**, Defendant respectfully demands that this Court:

(1) Dismiss the Complaint, and all claims and petitions for relief sought therein with prejudice;

(2) Grant the defendant its reasonable attorneys' fees and costs for this action; and

(3) Grant the defendant all such other remedy and relief, both legal and equitable, to which it is entitled.

### DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Defendant also hereby demands a trial by jury on all issues so triable.

### COUNTER-CLAIMS

The Environmental Energy Recycling Corporation, Inc., ("EERC"), a Pennsylvania based corporation by way of counter-claim against plaintiff Tri-State Biodiesel, LLC, alleges as follows:

1.     EERC is in the business of collecting used cooking oil, and recycling that oil into energy efficient bio-l fuel which, in its recycled form, is sold for use as heating, automotive   and/or other energy purposes.

2. The process of converting waste oils into usable biodiesel fuel is a new industry and, indeed, the capacity to accomplish the conversion exists in less than ten companies worldwide. EERC is one of those companies.

3. EERC purchases waste oils from varied sources within New York, New Jersey and Pennsylvania. Among its customers are a myriad of restaurants (e.g., fast food, and other large chain establishments) which use large volumes of cooking oils for the foods that they prepare for their customers.

4. Because the used oil – prior to recycling – is only waste that requires transfer and disposal, several owners and managers of such establishments have entered into agreements with EERC to give their used oil to EERC, which in turn – and at its own costs – provides means for its collection and transfer.

5. Among the methods that EERC has employed to collect the oils from such direct customer, and facilitate subsequent transfer of the oils to its processing plant, is the installation of its own, well marked and identified tanks at the rear or other authorized designated areas of the customers' establishments, and into which the establishments' employees can easily deposit the waste oils. On a routine schedule, EERC trucks visit the locations, empty the tanks into its trucks and transport the oils to the EERC processing plant.

6. Counter-claim defendant, Tri-State Biodiesel, LLC, ("Tri-State"), is a New York based business that is seeking to gain entry into the conversion of waste cooking oil into biodiesel fuel industry.

7. Tri-State doesn't yet have a conversion plant, but is constructing one, and has plans to enter the industry of recycling the waste oil into biodiesel fuel. Tri-State has also started collecting spent oils, some of which it has stored for its later anticipated use, and some of which it has sold to businesses that already have recycle conversion capability

8. In or about June 2007, EERC entered into an agreement with Tri-State pursuant to which Tri-State would provide waste cooking oil to EERC.

9. The agreement's terms provided that Tri-State would provide at least 12,000 and as much as 24,000 gallons of oil each week to EERC, for which EERC would pay a cost of between .42 cents and .68 cents per gallon. The actual price was dependant upon the grade of the oil that Tri-State produced. The contract provided a sliding scale of Grades, namely: Grade A -- the best grade oil -- had only 1% to 5 % of water and solids content. Pursuant to the June 2007 agreement, Grade A oil sold for .68 cents per gallon. Grade F identified the worst grade oil. It consisted of oil that had water and solids content of between 25% and 30% and it sold for .42 cents per gallon. The remaining grades of oil, B through E, identified oils that contained increasing contents of water and oils, and corresponding decreasing costs. Accordingly, the most that the agreement provided would be paid to Tri-State for its oil was .68 cents per gallon, which was for the highest grade oil. The least that would be paid was .42 cents per gallon, which was for the lowest grade oil.

10. Pursuant to its express terms, the June 2007 agreement ended in January 2008.

11. The June 2007 agreement is the only signed agreement ever entered into between the parties and, pursuant to its express terms, no modification or change to the agreement could occur other than by "separate written document executed by both parties."

12. In or about December 2007, Tri-State initiated discussions with EERC through which it sought to extend the June 2007 agreement into 2008. In those discussions, Tri-State sought to raise the price of the waste cooking oil to 1.00 per gallon without reference to the oil's grade.

13. EERC declined Tri-State's offer, noting that Tri-State's proposal sought to raise its existing price for its best grade oil by nearly 50%, and also raise its existing price for its worst grade oil by approximately 120%. EERC concluded that such dramatic price increases for waste cooking oil – without reference to quality, were unwarranted. As alternate, however, EERC counter offered to extend

the existing contract into January 2008 if Tri-State agreed to provide 100% of its collections to EERC, and guaranteed delivery of at least 19,500 gallons of oil each week. EERC advised that it had a particular end user client with whom it was contemplating a contract agreement, but could enter that agreement only if it had guaranteed receipt of 19,500 gallons of waste oil each week beginning in the first week of January 2008.

14. Aware of EERC's agreement with the third party, Tri-State guaranteed that it could and would provide 100% of its collections to EERC, and represented that that amount would total at least 19,500 gallons each week beginning the first week of January 2008.

15. In the very first week of January 2008, however, Tri-State breached the supposed agreement, and made no delivery of any waste oil to EERC. It advised that subsequent deliveries "make up" the missed amount from the prior absent delivery.

16. Tri-State's immediate breach imposed substantially increased financial costs to EERC (because it was required to find a last minute, alternate source of waste cooking oil in order to satisfy its contract obligations with the Third party) and the resultant delay also placed EERC in a compromised position with the Third party.

17. In addition to the above stated lapses by Tri-State, and also in or about January 2008, EERC also learned that collection drivers employed by Tri-State had also visited sites of several of EERC's direct restaurant customers – specifically, those noted above for whom EERC, pursuant to agreements with the restaurants, had placed disposal tanks – clearly marked to reflect ownership by EERC -- at such locations for EERC's planned retrieval. Tri-State drivers, however, misappropriated the contents of those tanks.

18. On information and belief, that waste oil – to which EERC had previously – and independent from Tri-State -- obtained ownership interest, was then "sold" back to EERC by Tri-State pursuant to the June 2007 agreement, and/or the proposed January 2008 extension.

19.     Also in or about January 2008, EERC also learned that Tri-State was not providing EERC with 100% of its collections, but rather was separately negotiating with and selling oil to EERC competitors.

## FIRST COUNTER-CLAIM CAUSE OF ACTION:
### FRAUD

20.     Counter-claim plaintiff, EERC repeats and re-alleges each of the allegations set forth above in ¶¶ 1-19 above as if set forth fully herein.

21.     Tri-state made a material and false representation regarding its willingness to provide 100% of its collections – and certainly at least 19,500 gallons of waste cooking oil per week to EERC in order to induce the latter consider extension of the parties June 2007 contract.

22.     By making that representation, aware that it was untrue, but anticipating that EERC would accept it as true, Tri-State intended to defraud EERC.

23.     EERC did in fact, accept the representation as true and for that reason relied upon it.

24.     Tri-State did not, however, provide 100% of its collections, or 19,500 gallons of oil to EERC week.

25.     As a result, and because of EERC's reliance, it suffered significant financial damages which, upon information and belief, were in an amount of at least Ninety-Five Thousand Dollars ($95,000.00).

## SECOND COUNTER-CLAIM CAUSE OF ACTION:
### FRAUD

26.     Counter-claim plaintiff EERC repeats and re-alleges each of the allegations set forth above in ¶¶ 1-19 above as if set forth fully herein.

27. Tri-state made a material and false representation regarding its independent collections of waste cooking oil which it could sell and deliver to EERC each week in order to induce the latter to consider extension of the parties June 2007 contract.

28. By making that representation, aware that it was untrue, but anticipating that EERC would accept it as true, Tri-State intended to defraud EERC.

29. EERC did in fact accept the representation as true, and for that reason relied upon it.

30. Tri-State did not, however, always perform independent collections of waste cooking oil which it then sold to EERC, but instead on, information and belief, misappropriated waste cooking oil from EERC containers that had been placed in separate fast food restaurants and other locations of EERC customers, and then "re-sold" that oil to EERC.

31. As a result, and because of EERC's reliance, it suffered significant financial damages which, upon information and belief, were in an amount of at least Ninety-Five Thousand Dollars ($95,000.00).

### THIRD COUNTER-CLAIM CAUSE OF ACTION: CONVERSION

32. Counter-claim plaintiff EERC repeats and re-alleges each of the allegations set forth above in ¶¶ 1-19 above as if set forth fully herein.

33. Upon information and belief, Tri-State misappropriated and exercised control over waste cooking oil from EERC containers that had been placed in separate fast food restaurants and other locations of EERC customers.

34. Tri-State's misappropriation and possession of that waste cooking oil interfered with EERC's superior possessory rights to it.

35. As a result, and because of Tri-State's conversion, EERC suffered significant financial damages which, upon information and belief, were in an amount of at least approximately Thirty Thousand Dollars ($30,000.00).

## FOURTH COUNTER-CLAIM CAUSE OF ACTION: INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

36. Counter-claim plaintiff EERC repeats and re-alleges each of the allegations set forth above in ¶¶ 1-19 above as if set forth fully herein.

37. Counter-claim plaintiff EERC entered into a separate business relationship with a third party, because of its expectation of receipt 100% of Tri-states collections of waste cooking oil, which would not be less then 19,500 gallons each week beginning in January 2008.

38. Tri-state was aware of that business relationship, and intentionally interfered with it in order to facilitate its own commercial advantage, by failing to provide delivery of 100% of its collections of waste cooking oil to EERC beginning in January 2008.

39. As a result, EERC's relationship with the Third party was harmed, and EERC suffered financial damages which, upon information and belief, were in an amount of at least approximately One Hundred Thousand Dollars ($100,000.00).

## FIFTH COUNTER-CLAIM CAUSE OF ACTION: NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

40. Counter-claim plaintiff EERC repeats and re-alleges each of the allegations set forth above in ¶¶ 1-19 above as if set forth fully herein.

41. Counter-claim plaintiff EERC entered into a separate business relationship with a third party, because of its expectation of receipt 100% of Tri-states collections of waste cooking oil, which would not be less then 19,500 gallons each week beginning in January 2008.

42. Tri-state was aware of that business relationship, and interfered with by failing to provide delivery of 100% of its collections of waste cooking oil to EERC beginning in January 2008.

43. As a result, EERC's relationship with the Third party was harmed, and EERC suffered financial damages which, upon information and belief, were in an amount of at least approximately One Hundred Thousand Dollars ($100,000.00).

**WHEREFORE**, Counter-Claim Plaintiff respectfully demands a money judgment in the amount of Two Hundred and Twenty-Five Thousand Dollars, together with any and all such other remedy and relief, both legal and equitable, which this Court determines to be just and proper.

NORRIS, McLAUGHLIN & MARCUS
A Professional Corporation
Attorneys for Defendant
Environmental Energy Recycling Corporation, LLC

/s/ Bryan Blaney
BRYAN BLANEY

Dated: June 13, 2008

Bryan Blaney
NORRIS MCLAUGHLIN & MARCUS
875 Third Avenue, 18th Floor
New York, New York 10022
Telephone (212) 808-0700
Attorneys for Defendant
Environmental Energy Recycling Corporation, LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
TRI-STATE BIODIESEL, LLC,

                    Plaintiff,

                    v.

ENVIRONMENTAL ENERGY RECYCLING
CORPORATION, LLC.

                    Defendant.

-----------------------------------------------------------------------x

Civil Case No.:
08-CIV-2997

**CERTIFICATION OF SERVICE**

      I, **BRYAN BLANEY, ESQ.,** hereby certify and affirm that I caused true and correct copies of defendant, Environmental Energy Recycling Corporation, LLC's, Answer with Separate Defenses and Counter-claims to be served via Electronic Mail on this 13th day of June, 2008, upon the following:

                Joshua Sabo, Esq.
                287 North Greenbush Road
                Troy, New York 12180
                Attorney for Plaintiff

Dated: New York, New York
        June  13, 2008

                              NORRIS, McLAUGHLIN & MARCUS PA
                              A Professional Corporation
                              Attorneys for Defendant
                              Evironmental Energy Recycling Corporation, LLC


                               /s/ Bryan Blaney
                              Bryan Blaney, Esq.